EXHIBIT A

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

SOUTHERN     DISTRICT OF     NEW YORK

AMERICAN GENERAL LIFE INSURANCE CO.

V.

STANLEY MANN, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  09-434-GMS (Dist. of Delaware)

TO:  STEPHEN MOSTECAK
29 SWAN ST
PALISADES, NY 10964-1518

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   Proskauer Rose LLP<br>1585 Broadway, New York, New York 10036 | DATE AND TIME<br>12/9/10 at 10:00 a.m. |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE SCHEDULE A.

| PLACE   Proskauer Rose LLP<br>1585 Broadway, New York, New York 10036 | DATE AND TIME<br>12/6/10 at 10:00 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* | 11/24/10 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Elise A. Yablonski, Esq. Proskauer Rose LLP
1585 Broadway, New York, New York 10036 (212) 969-3976 / eyablonski@proskauer.com

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev.  12/06) Subpoena in a Civil Case

| PROOF OF SERVICE | | |
|---|---|---|
| | DATE | PLACE |
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
    (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
    (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
    (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
    (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
    (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## SCHEDULE A

### Definitions and Instructions

1.      "American General" means American General Life Insurance Company (including any divisions, branches, or offices thereof), its counsel, and any consultants, experts, investigators, agents, representatives, or other persons acting on its behalf.

2.      "Agent Certification Form" means the agent certification form that American General purports to require its agents to complete in connection with the application for a life insurance policy seeking a death benefit of $500,000 or more when the insured is age 70 or older.

3.      "AIG" means American International Group, Inc. (including any divisions, branches, or offices thereof), its counsel, and any consultants, experts, investigators, agents, representatives, or other persons acting on its behalf.

4.      "Christiana Bank" means Christiana Bank & Trust Company.

5.      "Complaint" means the Complaint, dated June 10, 2009, filed by American General in this action, attached here as Exhibit A.

6.      "Application" means the application for insurance submitted to American General by the Applicants, as described in paragraph 15 of the Complaint.

7.      "Financial Questionnaire" means any financial statement or other statement of an insured's net worth, income or financial information which American General obtains in connection with the application for a life insurance policy.

8.      "Life Brokerage" means Life Brokerage Partners, LLC, its counsel, and any consultants, experts, investigators, agents (including but not limited to Kevin Bechtel and Ravi Malick), representatives, or other persons acting on its behalf.

9.     "Wechsler" means Wechsler Financial Group, Inc., its counsel, and any consultants, experts, investigators, agents (including but not limited to Stephen B. Wechsler), representatives, or other persons acting on its behalf.

10.    "Person" means any natural person or any other entity or association in law or in fact, and includes natural persons, or any business, legal or governmental entity or association.

11.    "Mann Policy" means American General Policy No. UM0027090L, issued with a Policy Date of June 10, 2007.

12.    "STOLI" or "SOLI" means stranger owned life insurance or stranger originated life insurance, including, but not limited to, how those terms are used in AIG and American General bulletins, memos and other documents.

13.    "IOLI" means investor owned life insurance or investor originated life insurance, including, but not limited to, how those terms are used in AIG and American General bulletins, memos and other documents.

14.    The word "all" is to be construed as "any and all," the word "any" is to be construed as "any and all," and the word "each" is to be construed as "all and each," so as to bring within the scope of this document request any information or documents that might otherwise be considered to be beyond its scope.

15.    The terms "concerning" and "concern" shall be construed to include: relate to, relating to, in connection with, relevant to, referring to, constituting, pertaining to, recording, evidencing, memorializing, embodying, setting forth, reflecting, showing, disclosing, reporting, describing, discussing, evaluating, considering, reviewing, explaining, analyzing, and summarizing.

2

16.     The term "document" is used herein in the broadest possible sense and includes,

without limitation, all originals, copies (if the originals are not available), non-identical copies

(whether different from the original because of underlining, editing marks, notes made on or

attached to such copy, or otherwise) and drafts of the following items, whether printed or

recorded (through a sound, video, computer, digital, optical or magnetic recording system) or

reproduced by hand: contracts, agreements, communications, writings, correspondence,

telegrams, facsimiles, memoranda, records, reports, books, summaries, records of telephone

conversations, recordings of voicemails, summaries or records of personal conversations or

interviews, diaries, calendars, forecasts, statistical statements, work papers, e-mails, instant

messages, web-pages, electronic bulletin boards, ledgers, drafts, graphs, charts, accounts,

analytical records, minutes or records of meetings or conferences, consultants' reports,

appraisals, records, reports or summaries of negotiations, brochures, pamphlets, circulars, trade

letters, press releases, notes, marginal notations, bills, invoices, checks, photographs, tape

recordings, microfilm, microfiche, floppy diskettes, lists, journals, advertisements, file folders,

computer tapes and hard drives, source code, object code or other computer language or

recording, and any other writing of whatever description, however produced or reproduced,

within your possession, custody or control, including documents within the files of your

attorneys, consultants, accountants or agents.

17.     The singular form of a word is to be construed to include the plural, and the plural

form of a word includes the singular, so as to bring within the scope of this document request

any information or documents that might otherwise be considered to be beyond its scope.

18.     In responding to the following Requests for documents, you are required to furnish all

documents that are available to you, including documents in the possession, custody or control of

your attorneys, accountants, agents, employees, representatives, or any other persons directly or indirectly employed by or connected with you or your attorneys or anyone else subject to your control.

19.    If you withhold any document covered by this request by reason of a claim of privilege or otherwise, please furnish a list identifying each such document with the following information: (1) the date of the document; (2) the identity and title of its author, authors, or preparers; (3) the identity and title of each person to receive or view the document; (4) a brief description of the document; (5) a statement of the basis for the claim of privilege or assertion that it is otherwise immune or protected from discovery in sufficient detail so as to permit the Court to adjudicate the validity of the claim or assertion.

20.    In the event that any document called for by this request has been destroyed, lost, discarded or otherwise disposed of, any such document is to be identified as completely as possible, including, without limitation, identifying the following information: (a) the date of disposal of the document; (b) the manner of disposal of the document; (c) the reason for disposal of the document; (d) the person authorizing the disposal of the document; (e) the person actually disposing of the document; (f) the nature of the document (e.g. interoffice memorandum, correspondence, report); (g) the author or sender; (h) the addressee; (i) the date of the document; (j) the names of all people who received the document or a copy of the document or were listed on any circulation list or "cc" designation relating to the document; and (k) a description of the contents of the document.

21.    The documents produced shall be produced as they are kept in the ordinary course of business or shall be organized and labeled to correspond to the specific paragraph(s) and sub-paragraphs of the Request to which they are responsive. Specifically, in producing the

4

documents requested herein, produce the documents in their original file folder, or, in lieu

thereof, attach to the set of documents produced from a given file a photographic or electrostatic

duplicate of all written or printed materials on the original file folder.  The integrity and internal

sequence of the requested documents within each folder shall not be disturbed.  Documents from

any file folder shall not be commingled with documents from any other file folder.

22.     These Requests are continuing Requests and require further and supplemental

production by you as and whenever you locate, produce, create, or acquire additional documents

covered by this request between the time of initial production hereunder and the termination of

this action.

## **Document Requests**

1.     All documents concerning AIG's or American General's investigation, audit or

review of the Mann Policy after it was issued, or any attempts to investigate or verify any

statements or answers in the Application, Financial Questionnaire or Agent Certification Form,

including but not limited to the investigation described in paragraphs 31-41 of the Complaint.

2.     All documents concerning AIG's or American General's decision to attempt

rescission, invalidation, cancellation or voidance of the Mann Policy.

3.     All documents reflecting communications between and among American General,

AIG and any other insurance company, including any emails, concerning Christiana Bank.

4.     All documents reflecting communications within American General and/or AIG

concerning Christiana Bank.

5.     All documents reflecting communications between and among American General,

AIG and any other insurance company, including any emails, concerning Wechsler, Stephen

Wechsler and/or Andrew Williams.

6.      All documents reflecting communications within American General and/or AIG concerning Wechsler, Stephen Wechsler and/or Andrew Williams.

7.      All documents reflecting communications between and among American General, AIG and any other insurance company, including any emails, concerning Life Brokerage, Kevin Bechtel and/or Ravi Malick.

8.      All documents reflecting communications within American General and/or AIG concerning Life Brokerage, Kevin Bechtel and/or Ravi Malick.

9.      All documents concerning American General's and/or AIG's knowledge, suspicion or investigation as to the involvement of any of the following entities or individuals in Third Party Owned Life Insurance transactions, including, but not limited to any investigation file compiled or maintained by American General, AIG or you concerning any such investigation, knowledge or suspicion:

      a.   Christiana Bank;

      b.   Wechsler, Stephen Wechsler and/or Andrew Williams; and

      c.   Life Brokerage, Kevin Bechtel and/or Ravi Malick.

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE : COMPANY | Civil Action No: |
| : | |
| Plaintiff, : | |
| : | |
| vs. : | |
| : | |
| STANLEY MANN, THE STANLEY MANN : 2007 INSURANCE TRUST, CHRISTIANA : BANK & TRUST CO., as Trustee, and JOHN : DOES 1- 10, : | |
| : | |
| Defendants. | |

## COMPLAINT

Plaintiff, American General Life Insurance Company ("American General"), having its

principal place of business at 2929 Allen Parkway Houston, Texas 77019, by and through its

undersigned counsel, and by way of Complaint against the defendants, Stanley Mann (hereinafter

"Mann"), the Stanley Mann 2007 Insurance Trust (hereinafter "the Trust"), the Christiana Bank

& Trust Co., (hereinafter "the Trustee"), as Trustee, and John Does 1 -10; (hereinafter

collectively referred to as "Defendants") states as follows:

### Introduction

1.      American General seeks a declaration from this Court that Flexible Premium

Adjustable Life Policy UM0027090L (hereinafter "the Policy") issued by American General to

the Trust in the amount of $3,500,000 and insuring the life of Mann is void *ab initio* based upon

material misrepresentations contained in the application for the Policy.

2.      In the application for the Policy and during the underwriting process, Mann, the

Trustee, and the Trust represented to American General that Mann's personal net worth was at

865392.1

least $7,200,000. Defendants further represented to American General that Mann had an annual

household income of $405,000. American General reasonably relied upon those representations

in evaluating the application for insurance and deciding to issue the Policy.

3.      Despite its efforts, which are ongoing, American General has been unable to

verify Mann's, the Trustee's, or the Trust's representations regarding Mann's personal net worth

and income. Moreover, Mann has refused to cooperate with American General in connection

with American General's investigation regarding the representations in the application and has

thereby prevented American General from completing its investigation in a timely manner.

4.      American General now believes and therefore alleges upon information and

belief, and subject to the completion of American General's investigation, that Mann, the

Trustee, and the Trust misrepresented Mann's personal net worth and income in connection with

the application for the Policy.

5.      American General further believes and therefore alleges upon information and

belief, and subject to the completion of American General's investigation that, if American

General had been aware of the true facts concerning Mann's true personal net worth and income

at the time it issued the Policy, American General would have declined to issue the Policy.

Therefore, the Policy is void *ab initio*.

6.      Moreover, upon information and belief and subject to the completion of American

General's investigation, American General alleges that Mann and the Trust did not purchase the

Policy for purposes of "financial planning" as represented in the application, and that the Trust

was never intended to maintain a controlling or beneficial interest in the Policy. Rather, the

Trust was set up and identified as owner of the Policy for the sole purpose of ceding all

controlling interest in the Policy to John Does 1- 10 who are persons and/or entities with no

2

865392.1

insurable interest in the life of Mann.

      7.     Thus, upon information and belief and subject to the completion of American

General's investigation, American General alleges that the Trust is a sham perpetrated in an

attempt to circumvent applicable laws and public policy pertaining to insurable interest. As

such, the Trust lacked any insurable interest in the life of Mann, and the Policy is, therefore, void

*ab initio.*

### Jurisdiction, Parties, and Venue

      8.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332

based upon the diversity of citizenship of the parties and the amount in controversy exceeding

$75,000.

      9.     Venue lies within this District under the provisions of 28 U.S.C. § 1391(a)

because one or more of the defendants resides within this District and a substantial part of the

events and omissions giving rise to the claim occurred within this district.

      10.    American General is a Texas corporation duly authorized to transact the business

of insurance in the State of Delaware, with its principal place of business in the State of Texas.

      11.    Upon information and belief, the Trust is a citizen of the State of Delaware with

an address of 3801 Kennet Pike, Greenville, DE, 19807.

      12.    The Trustee, upon information and belief, is a citizen of the State of Delaware and

has an address of 3801 Kennet Pike, Greenville, DE, 19807.

      13.    Mann is the insured under the Policy at issue. Upon information and belief, Mann

is a citizen of the state of Florida, whose last known residence address is 9286 Vista Del Lago,

Boca Raton, FL, 33428.

      14.    Upon information and belief and subject to the completion of American General's

investigation, John Does 1-10 are presently unknown individuals and/or entities who have present and/or future intentions to circumvent applicable insurable interest rules and public policy.

### Application and Misrepresentations

15.    On or about June 15, 2007, Mann, the Trustee, and insurance producer Stephen Wechsler (hereinafter "Wechsler") executed Part A Life Insurance Application (hereinafter the "Application") seeking issuance of the Policy.

16.    The Application was purportedly executed in Greenville, DE.

17.    Question 1 on the Application asked for Mann's annual income and net worth.

18.    In response to Question 1 on the Application, Mann and the Trustee represented that Mann had an annual household income of $405,000.

19.    Also in response to Question 1 on the Application, Mann and the Trustee represented that Mann had a net worth of $7,200,000.

20.    In response to Question 4 on the Application, Mann and the Trustee identified the owner of the Policy as the Trust.

21.    In response to Question 5 on the Application, Mann and the Trustee represented that the reason for the Policy was "financial planning."

22.    By executing the Application, Mann and the Trustee acknowledged and agreed that American General would rely upon the information provided in the Application when determining whether to issue the Policy. Furthermore, Mann and the Trustee promised that the information in the Application was true and complete as follows:

> I have read above statements or they have been read to me. They
> are true and complete to the best of my knowledge and belief. I
> understand that this application: (1) will consist of Part A, Part B,
> and if applicable, related forms; and (2) shall be the basis for any

4

865392.1

Case 1:09-cv-00434-GMS   Document 1   Filed 06/10/09   Page 5 of 15 PageID #: 5

> policy issued. I understand that any misrepresentations contained
> in this application and relied on by the Company may be used to
> reduce or deny or void the policy if: (1) it is within the contestable
> period; and (2) such misrepresentation materially affects the
> acceptance of the risk...."

23.    On or about June 18, 2007, Mann and the Trustee completed and executed a

Financial Questionnaire in further support of their application for issuance of the Policy. The

Financial Questionnaire was purportedly executed in Greenville, DE.

24.    Question 1 on the Financial Questionnaire requested a statement of Mann's

personal pre-tax income from all sources for the current fiscal year and for the previous fiscal

year.

25.    In response to Question 1 on the Financial Questionnaire, Mann and the Trustee

represented Mann's personal pre-tax income as $405,000 for both the current fiscal year (2007)

and the previous fiscal year (2006), comprised of unearned income from "interest, dividends, and

net real estate income."

26.    Question 2 on the Financial Questionnaire asks, "What is your approximate net

worth, i.e., assets minus liabilities? (If necessary, give details in 'Remarks' below)."

27.    In response to Question 2 on the Financial Questionnaire, Mann and the Trustee

represented Mann's approximate net worth as $7,200,000 for both the current fiscal year and the

previous fiscal year.

28.    In reliance upon these answers and each and every representation made by Mann

and the Trustee in the Application and the Financial Questionnaire, American General executed,

issued, and caused to be delivered to Wechsler the Policy with an Issue Date of June 10, 2007.[1]

29.    On August 30, 2007, Wechsler and Marsha S. Bright, on behalf of the Trust as

---

[1] The Policy was backdated to preserve the age of seventy-two (72).

5

owner, completed a Policy Owner Acknowledgement of Policy Delivery form.

     30.    American General incurred costs in connection with the issuance and administration of the Policy and in connection with its investigation of the misrepresentations.

### Discovery of Mann's, the Trustee's, and the Trust's Misrepresentations

     31.    American General subsequently conducted a routine review and investigation of the application for the Policy and the representations contained therein.

     32.    In the course of its investigation, American General discovered facts suggesting that Mann, the Trustee, and the Trust materially misrepresented Mann's net worth and personal income in connection with the Application for the Policy. American General also learned for the first time that Mann, the Trustee, and the Trust misrepresented their true intentions regarding the reason for applying for and purchasing the Policy.

     33.    American General has attempted to secure Mann's cooperation in obtaining information to confirm the representations in the application.

     34.    Mann has refused to cooperate with American General's investigation.

     35.    Specifically, American General, through its counsel, informed Mann that the Policy is under investigation by American General. American General, through its counsel, requested confirmation of certain information in connection with Mann's application for the Policy and asked for Mann's cooperation.

     36.    Mann advised that that Stephen Wechsler had instructed Mann to refuse to answer questions regarding the Policy or the application therefor and to instead refer all such inquiries to the Blumberg Law Group.

     37.    Mann was unable to provide the name of any lawyer at the Blumberg Law Group to whom the inquiries should be directed. Furthermore, Mann could not recall with any certainty

6

the city where the Blumberg Law Group is located. Mann conceded that he had never retained
any lawyer at the Blumberg Law Group to retain him with respect to the Policy and did not know
whether any lawyer had been retained on his behalf.

38.     In light of Mann's refusal to cooperate with American General's investigation and
inability to identify any lawyer to whom such inquiries could be directed, American General,
through counsel, directed written requests to Mann (via overnight mail, certified mail, and first
class mail) itemizing documentation and/or other information needed to verify Mann's annual
income and net worth as of the date of the application.

39.     American General further advised Mann that if the requested documentation was
not received by the close of business on Monday, June 08, 2009, or, alternatively, if Mann did
not contact counsel for American General American to arrange a mutually acceptable agreement
regarding a time frame to produce the requested documentation, American General would
consider this refusal to cooperate as a clear indication of Mann's inability to confirm and/or
support his representations set forth in the application for the Policy and would therefore
commence legal proceedings seeking a declaration of the parties' rights and liabilities under the
Policy.

40.     American General did not receive a response from Mann or on behalf of Mann by
the close of business on Monday, June 8, 2009.

41.     Despite its ongoing investigation, American General has been unable to verify
Mann's, the Trustee's, or the Trust's representations regarding Mann's personal net worth or
income.

42.     Based upon the results of its investigation and review, and subject to the
completion of its investigation, American General believes and thereupon alleges that Mann's

actual income and net worth as of the date when the Policy was applied for and issued were
misrepresented by Mann, the Trustee, and the Trust and that if American General knew the true
facts regarding Mann's actual income and net worth, American General would not have agreed
to approve, issue, or deliver the Policy.

43.     American General reasonably relied upon the misrepresentations and omissions
contained in the Application and the Financial Questionnaire, and otherwise made by Mann, the
Trustee, and the Trust in support of the application for the Policy.

44.     American General incurred costs in connection with the investigation regarding
Mann's, the Trustee's, and the Trust's misrepresentations.

### Mann's True Intentions for the Insurance

45.     Upon information and belief and subject to the completion of American General's
investigation, neither Mann, the Trustee, nor the Trust had at any time relevant to the application
for issuance of the Policy, any intention of maintaining a controlling or beneficial ownership
interest in the Policy or the benefits that might become payable thereunder. Rather, at all times
relevant, Mann and the Trust intended to sell, surrender, or otherwise fully encumber all
controlling or beneficial ownership interest in the Policy and its prospective benefits in exchange
for immediate pecuniary gain through financial transactions with John Does 1 - 10.

46.     Based upon information and belief, and subject to the completion of American
General's investigation, contrary to Mann's, the Trustee's, and the Trust's representations to
American General, neither Mann, the Trustee, or the Trust ever intended to pay any premiums
for the Policy from Mann's personal assets or assets transferred by Mann to the Trust.

47.     Mann, the Trustee, and the Trust did not reveal their present intentions to sell,
transfer and/or otherwise encumber the ownership interests for the benefit of John Does 1-10 at

8

Case 1:09-cv-00434-GMS Document 1 Filed 06/10/09 Page 9 of 15 PageID #: 9

the time they completed the application or accepted delivery of the Policy and paid the first

premium. Rather, Mann, the Trustee, and the Trust intentionally concealed their intentions in

order to deceive American General into approving, issuing, and delivering the Policy as applied

for.

48.      Because Mann, the Trustee, and the Trust had previously formed the intention to

sell, surrender, or otherwise fully encumber the Policy, Mann and/or the Trust lacked an

insurable interest in Mann's life as of the date on which the Policy was issued.

### The Misrepresentations Were Material

49.      The misrepresentations in the Application and the Financial Questionnaire

concerning Mann's income, net worth, and reason for insurance materially affected American

General's decision to issue and deliver the Policy as written and to accept the risks upon which

issuance and delivery of the Policy were based.

50.      In light of the foregoing facts and circumstances, American General believes and

thereupon alleges that, if American General had been aware of Mann's true net worth and

income and/or true reason for insurance, American General would not have issued the Policy.

51.      American General believes and thereupon alleges that, if true and complete

information had been provided in response to the questions on the Application and the Financial

Questionnaire, American General would not have issued the Policy.

### COUNT I
### (Material Misrepresentation)

52.   .   American General hereby repeats and reasserts each of the allegations contained

in each of the foregoing paragraphs as if fully set forth at length.

53.      The response to Question 1 on the Application was false and failed to disclose

Mann's true income and net worth.

9

865392.1

54.     The response to Question 5 on the Application was false and failed to disclose Mann's true intention for the Policy.

55.     The statement of acknowledgement and agreement by virtue of Mann's and the Trustee's signatures on the Application for the Policy was false.

56.     All other statements made or submitted to American General relating to Mann's income and net worth, and/or true reason for insurance, including those contained in the Financial Questionnaire, were false, incomplete, and otherwise materially misleading.

57.     Mann's true financial status, including his income and net worth, which was not disclosed in the Application, was material to the risk undertaken by American General in issuing the Policy as written and was relied upon by American General in issuing the Policy.

58.     Mann's true intention and reason for seeking issuance of the Policy, which was not disclosed in the Application, was material to the risk undertaken by American General in issuing the Policy.

59.     American General's reliance upon the material misrepresentations and omissions in the Application and/or in connection with the Application was reasonable.

60.     If Mann, the Trustee, and/or the Trust had fully and completely disclosed Mann's income and net worth and/or true reasons for seeking issuance of the Policy, or if the same facts had otherwise been made known by them before or at the time of issuance or delivery of the Policy, American General would not have executed, issued, or delivered the Policy or accepted premiums for the Policy.

61.     Because of the foregoing material misrepresentations and failure to disclose, the Policy is void *ab initio* and of no force of effect since its inception, and American General never has been and never will become liable to anyone thereunder.

865392.1

62.　　American General has been damaged by virtue of Defendants' material

misrepresentations, and has incurred damages, expenses, and costs in connection with, among

other things, its underwriting and issuance of the Policy, payment of commissions and fees in

connection with issuance of the Policy, administration and servicing of the Policy, investigation

of the misrepresentations, fraud, and concealment outlined above, and commencement of the

present litigation to enforce its rights.

63.　　In light of the foregoing damages, expenses, and costs incurred by American

General, American General should be permitted to retain the premiums paid for the Policy as an

offset against such damages and costs. Without such retention and/or offset, the equitable

remedies sought herein, including restitution would be rendered futile or impossible.

64.　　Notwithstanding the foregoing, American General stands ready, willing, and able

to refund or otherwise make payment of all or any portion of the premiums paid for the Policy as

directed by this Court in accordance with American General's demand for rescission of the

Policy and restitution of the parties to their pre-contract positions insofar as it is possible and

equitable.

65.　　Accordingly, American General hereby makes constructive tender of the

premiums paid for the Policy and respectfully seeks this Court's direction as to actual payment

of the same.

## COUNT II
### (Fraud)

66.　　American General hereby repeats and reasserts each of the allegations contained

in each of the foregoing paragraphs as if fully set forth at length.

67.　　The misrepresentations and failure to disclose Mann's true net worth in the

11

application for the Policy were made and done knowingly by Mann, the Trustee, and the Trust
with intent to deceive American General into issuing and delivering the Policy.

68.     The misrepresentations and failure to disclose Mann's, the Trustee's, and the
Trust's true reasons for purchasing the Policy set forth in the Application were made and done
knowingly by Mann, the Trustee, and the Trust with intent to deceive American General into
issuing and delivering the Policy.

69.     The foregoing fraudulent misrepresentations did, in fact, induce and deceive
American General to its detriment to issue and deliver the Policy.

70.     If Mann, the Trustee, and/or the Trust had fully and completely disclosed Mann's
true net worth, annual income, and/or true reason for purchasing the Policy prior to or at the time
of the issuance or delivery of the Policy, American General would never have executed, issued,
or delivered the Policy, nor would American General have accepted premiums for the Policy.

71.     Because of the intentional and fraudulent misrepresentations and concealment, the
Policy is void *ab initio* and of no force and effect since its inception and American General never
has nor will American General become liable to anyone thereunder.

72.     American General has sustained damages as a result of the misrepresentations,
non-disclosure and/or concealment

## COUNT III
### (Insurable Interest)

73.     American General hereby repeats and reasserts each of the allegations contained
in each of the foregoing paragraphs as if fully set forth at length.

74.     At all times relevant to the application for the Policy at issue, the Trust lacked any
insurable interest in the life of Mann.

75.     In fact, upon information and belief, and subject to the completion of American

General's investigation, the sole purpose for creation of the Trust was to further the efforts of John Does 1-10 to circumvent applicable insurable interest rules and public policy.

76.     The application for and purported ownership of the Policy by the Trust was merely a sham transaction intended to circumvent and violate applicable insurable interesst rules and public policy.

77.     Therefore, the Policy is void *ab initio* and of no force and effect since its inception and American General never has and never will become liable to anyone thereunder.

## COUNT IV
### (Declaratory Relief)

78.     American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

79.     An actual controversy has arisen and now exists between American General and defendants concerning their respective rights and duties under the Policy.

80.     American General contends that because of the material and fraudulent misrepresentations and concealments regarding Mann's true net worth, income, and intention for the Policy, the Policy is void *ab inito* and of no force and effect since its inception, and American General never has and never will become liable to anyone thereunder.

81.     A declaration is necessary and appropriate at this time in order that American General may ascertain and know its rights and obligations under the Policy.

WHEREFORE, American General demands judgment in its favor and against Defendants as follows:

a.     A declaration pursuant to 28 U.S.C. § 2201 that American General is entitled to keep all premiums paid under the Policy as offset against damages, costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as

13

necessary to restore American General to its pre-contract position, and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation.

b.      In the alternative, a declaration pursuant to 28 U.S.C. § 2201 that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation.

c.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

14

Case 1:09-cv-00434-GMS   Document 1   Filed 06/10/09   Page 15 of 15 PageID #: 15

    e.    Such other and further relief as may be available to American General which the

Court deems to be equitable and just.

                       **WILSON, ELSER, MOSKOWITZ,**
                       **EDELMAN & DICKER LLP**

                       Megan Harper, Esquire
                       Delaware Attorney No. 4103
                       The Curtis Center, Suite 1103 East
                       Independence Square West
                       Philadelphia, PA  19106
                       Phone: 215-627-6900
                       Facsimile: 215-627-2665
                       Email: Megan.Harper@wilsonelser.com

                       *Attorney for Plaintiff, American*
                       *General Life Insurance Company*

Dated: June 10, 2009

865392.1